Slip Op. 10-107

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| FEILI GROUP (FUJIAN) CO., LTD., FEILI FURNITURE DEVELOPMENT LIMITED QUANZHOU CITY | |
| Plaintiffs, | Before:  Richard W. Goldberg, Senior Judge |
| and | Court No. 09-00068 |
| COSCO HOME AND OFFICE PRODUCTS | |
| Plaintiff-Intervenor | |
| v. | |
| UNITED STATES, | |
| Defendant, | |
| and | |
| MECO CORPORATION, | |
| Defendant-Intervenor. | |

## OPINION

[Commerce's final antidumping duty administrative review determination is sustained.]

Dated: September 23, 2010

Trade Pacific, PLLC (Robert George Gosselink and Jonathan Michael Freed) for Plaintiffs Feili Group (Fujian) Co., Ltd. and Feili Furniture Development Limited Quanzhou City.

Kelley Drye & Warren, LLP (Mary Tuck Staley) for Plaintiff-
Intervenor Cosco Home and Office Products.

Tony West, Assistant Attorney General; Jeanne E. Davidson,
Director, Reginald T. Blades, Jr., Assistant Director,
Commercial Litigation Branch, Civil Division, U.S. Department of
Justice (L. Misha Preheim and Carrie Anna Dunsmore); Office of
the Chief Counsel for Import Administration, U.S. Department of
Commerce (Brian Soiset), Of Counsel, for Defendant United
States.

Akin, Gump, Strauss, Hauer & Feld LLP (Warren E. Connelly)
for Defendant-Intervenor Meco Corporation.

GOLDBERG, Senior Judge:  Plaintiffs Feili Group

(Fujian) Co., Ltd. and Feili Furniture Development Limited

Quanzhou City (collectively "Feili") and Plaintiff-Intervenor

Cosco Home and Office Products[1] challenge the final results of

the underlying fifth administrative review issued by the

Department of Commerce ("Commerce" or "the Department") in

Folding Metal Tables and Chairs from the People's Republic of

China: Final Results of Antidumping Duty Administrative Review,

74 Fed. Reg. 3,560 (Dep't Commerce Jan. 21, 2009) ("Final

Results").

## I.    STATEMENT OF THE FACTS

The antidumping duty order on imports of folding metal

tables and chairs from the People's Republic of China was first

---

[1] During the underlying administrative review period, Cosco Home
and Office Products imported certain metal folding chairs and
tables from Plaintiffs.  As Plaintiff-Intervenor, Cosco chose
not to file a separate brief addressing Feili's Rule 56.2
motion.  By letter, it expressed support for the arguments
advanced by Feili.  Letter from Kelley Drye & Warren in Response
to June 23, 2009 Scheduling Order, Docket No. 37 (Aug. 7, 2009).

issued in June 2002.  <u>Antidumping Duty Order: Folding Metal</u>
<u>Tables and Chairs from the People's Republic of China</u>, 67 Fed.
Reg. 43,277 (Dep't Commerce June 27, 2002) ("<u>Antidumping Duty</u>
<u>Order</u>").  Three consecutive subsequent antidumping duty
administrative reviews found that Feili was not dumping or was
dumping at <u>de minimis</u> levels.  <u>Folding Metal Tables and Chairs</u>
<u>from the People's Republic of China: Final Results of</u>
<u>Antidumping Duty Administrative Review</u>, 71 Fed. Reg. 2,905
(Dep't Commerce Jan. 18, 2006) (second administrative review);
71 Fed. Reg. 71,509 (Dep't Commerce Dec. 11, 2006) (third
administrative review); 72 Fed. Reg. 71,355 (Dep't Commerce Dec.
17, 2007) (fourth administrative review).

        Pursuant to Commerce's issuance of an opportunity to
request an administrative review, Feili requested review of its
sales of subject merchandise for the period from June 1, 2006
through May 31, 2007 in the fifth administrative review.
<u>Antidumping or Countervailing Duty Order, Finding, or Suspended</u>
<u>Investigation: Opportunity To Request Administrative Review</u>, 72
Fed. Reg. 30,542 (Dep't Commerce June 1, 2007).  Feili's request
for an administrative review included a request for revocation
of the <u>Antidumping Duty Order</u>.  Letter from Trade Pacific PLLC
to the Assistant Secretary for Import Administration, Admin. R.
Pub. Doc. 4 (June 29, 2007).

On July 14, 2008, Commerce issued its preliminary
results for the period of the underlying review, calculating a
de minimis dumping margin for Feili's sales, and indicating its
intent to revoke the order.  Folding Metal Tables and Chairs
from the People's Republic of China: Preliminary Results of
Antidumping Duty Administrative Review and Intent to Revoke in
Part, 73 Fed. Reg. 40,285 (Dep't Commerce July 14, 2008)
(preliminary results).  Commerce preliminarily found that Feili
had satisfied the regulatory requirements for revocation
detailed at 19 C.F.R. § 351.222(b)(2).  Id. at 40,292.  The
intention to revoke was based, in part, on Commerce's
preliminary determination that Feili had demonstrated three
consecutive years of sales at not less than normal value, one of
the three regulatory requirements for revocation.  Id.
Commerce also preliminarily determined that the continued
application of the order to Feili was not otherwise necessary to
offset dumping, another regulatory requirement under 19 C.F.R. §
351.222(b)(2).  Id.

At the same time Commerce was conducting the
underlying administrative review, Commerce was conducting an
anti-circumvention inquiry (also referred to as a "scope
inquiry").  On October 31, 2005, prior to the start of the third
administrative review, domestic producer and Defendant-
Intervenor Meco Corporation ("Meco") requested that Commerce

review the scope of the antidumping order to determine whether
imports of certain folding metal tables with cross-bars were
circumventing the Antidumping Duty Order.  Affirmative
Preliminary Determination of Circumvention of the Antidumping
Duty Order on Folding Metal Tables and Chairs from the People's
Republic of China, 73 Fed. Reg. 63,684 (Dep't Commerce Oct. 27,
2008) (preliminary determination) ("Affirmative Preliminary
Determination of Circumvention").  On June 1, 2006, coinciding
with the first day of the fifth administrative review period,
Commerce initiated a formal scope inquiry relating to minor
alterations with respect to folding metal tables and chairs.
Id., see generally Tariff Act of 1930, § 781(c), 19 U.S.C. §
1677j(c) (2006).[2]

        The order defined folding metal tables as having "legs
that mechanically fold independently of one another, and not as
a set."  Antidumping Duty Order, 67 Fed. Reg. at 43,278.
Commerce preliminarily determined that the folding metal tables
with cross-bars at issue in the scope inquiry ("cross-bar
tables") "are not expressly excluded from the order" and are
within the class or kind of merchandise subject to the
Antidumping Duty Order.  Affirmative Preliminary Determination
of Circumvention, 73 Fed. Reg. at 63,685-86.  Commerce concluded

---

[2] Further citations to the Tariff Act of 1930 are to the relevant
portions of Title 19 of the U.S. Code, 2006 edition.

that there were no "significant differences in expectations of
the ultimate users, uses of the merchandise, and channels of
marketing between folding metal tables with and without cross-
bars" and that "the cost of adding cross-bars to tables in the
course of production is negligible." Id. at 63,686.  Commerce
issued its preliminary determination that certain cross-bar
tables were circumventing the duty order on October 27, 2008.
Id. at 63,684.  This affirmative preliminary finding of
circumvention was made after the issuance of the preliminary
determination to revoke the order, but prior to the issuance of
Commerce's Final Results in the underlying administrative
review, which included Commerce's final revocation
determination.  In accordance with section 351.225(l)(2) of
Commerce's regulations, Commerce directed U.S. Customs and
Border Protection ("Customs") to suspend liquidation of the
subject cross-bar tables entered, or withdrawn from warehouse,
for consumption on or after June 1, 2006, the date of the
initiation of the scope inquiry.  Id. at 63,684; see generally
19 C.F.R. 351.225(l)(2).

        In light of the Affirmative Preliminary Determination
of Circumvention, Commerce placed the public Federal Register
notice and the accompanying public version of the analysis
memorandum from the scope inquiry into the record of the
underlying administrative review.  Memo from Analyst to File:

Opportunity to Comment on Affirmative Preliminary Determination
of Circumvention, Admin. R. Pub. Doc. 130, (Nov. 12, 2008).
Commerce requested that parties comment on the relevance of
these scope inquiry findings to the revocation of the order in
the underlying administrative review.[3]  Id.

In the Final Results, issued on January 21, 2009,
Commerce reversed its preliminary determination and denied
Feili's request for revocation in part in light of Commerce's
then pending scope inquiry.  Final Results, 74 Fed. Reg. at
3,562.  On May 6, 2009, Commerce issued a final ruling in the
scope inquiry sustaining its preliminary determination that the
cross-bars tables at issue are within the class or kind of
merchandise subject to the Antidumping Duty Order.  Affirmative
Final Determination of Circumvention of the Antidumping Duty
Order on Folding Metal Tables and Chairs from the People's
Republic of China, 74 Fed. Reg. 20,920 (Dep't Commerce May 6,
2009) (final determination) ("Affirmative Final Determination of
Circumvention").  In the Affirmative Final Determination of
Circumvention, Commerce explained that while it normally
instructs Customs to continue the suspension of liquidation that

---

[3] Upon Commerce's invitation, two parties chose to comment.
Plaintiff-Intervenor Cosco submitted comments. Letter from
Kelley Drye to the Secretary of Commerce, Admin. R. Pub. Doc.
131, (Nov. 24, 2008).  Defendant-Intervenor Meco also responded.
Letter from Akin Gump to the Secretary of Commerce, Admin. R.
Pub. Doc. 132, (Nov. 24, 2008).

was already instructed in an affirmative preliminary
determination of circumvention, doing so in the instant inquiry
would include merchandise that entered during a completed review
period, i.e. the underlying fifth administrative review.  Id. at
20,922.  Therefore, Commerce ordered Customs to suspend
liquidation of entries as of June 1, 2007,[4] the first day of the
only pending administrative review period of the duty order at
the time.  Id.

    In contesting the Final Results, Feili argues that
Commerce misapplied the regulatory criteria guiding revocation
detailed at 19 C.F.R. § 351.222(b).  Feili claims that Commerce
improperly considered the preliminary results of the anti-
circumvention inquiry and the pending anti-circumvention inquiry
when making the revocation decision.  Feili argues that: (1) the
anti-circumvention inquiry was irrelevant to the revocation
determination; (2) it met the regulatory requirement of three
years of no or de minimis dumping "on its face"; (3) there was
no positive evidence on the record to indicate that continuation
of the order was otherwise necessary to offset dumping; (4)

---

[4] The reference to July 1, 2007 rather than June 1, 2007 in the
Federal Register notice is presumed to be a typographical error.
See Affirmative Final Determination of Circumvention, 74 Fed.
Reg. at 20,922.  The instruction issued to Customs identified
the liquidation suspension date as June 1, 2007.  See Customs
Message No. 9148202, A-570-868 (May 28, 2009) available at
http://addcvd.cbp.gov/index.asp?docID=9148202&qu=a570868&vw=
detail (last visited Sept. 22, 2010).

Commerce employed an incorrect legal standard in reaching its
revocation determination; and (5) Commerce acted unreasonably
and unfairly in the timing and duration of the anti-
circumvention inquiry and in its failure to conduct the inquiry
in conjunction with the antidumping review.  Accordingly, Feili
asserts that Commerce's determination to deny revocation in part
in the Final Results must be reversed.

For the reasons explained below, the Plaintiffs'
arguments fail.  Commerce's determination in the Final Results
is supported by substantial evidence and is in accordance with
law.

## II.   JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction pursuant to 28 U.S.C. §
1581(c) (2006).

This Court holds as unlawful agency determinations
that are "unsupported by substantial evidence on the record, or
otherwise not in accordance with law."  19 U.S.C. §
1516a(b)(1)(B)(i) (2006).  "Substantial evidence is more than a
mere scintilla.  It means such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion."  Consol.
Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed.
126 (1938).  Substantial evidence is measured by the record as a
whole, "including whatever fairly detracts from the
substantiality of the evidence."  Atl. Sugar, Ltd. v. United

States, 744 F.2d 1556, 1562 (Fed. Cir. 1984).  Substantial

evidence "is something less than the weight of the evidence, and

the possibility of drawing two inconsistent conclusions from the

evidence does not prevent an administrative agency's finding

from being supported by substantial evidence."  Consolo v. Fed.

Maritime Comm'n, 383 U.S. 607, 620, 86 S. Ct. 1018, 16 L. Ed. 2d

131 (1966).  The Court need only find evidence "which could

reasonably lead" to the conclusion drawn by Commerce, thus

making it a "rational decision."  Matsushita Elec. Indus. Co. v.

United States, 750 F.2d 927, 933 (Fed. Cir. 1984).

        In analyzing an agency's construction of a statute,

the Court must first determine whether Congress has spoken

directly on the issue.  Chevron, U.S.A., Inc. v. Natural Res.

Def. Council, Inc., 467 U.S 837, 842, 104 S. Ct. 2778, 81 L. Ed.

2d 694 (1984).  If the statute is silent on the issue or if the

Court determines that the statute is ambiguous, "the question

for the court is whether the agency's answer is based on a

permissible construction of the statute."  Id. at 843.

Deference is given to the agency's reasonable interpretation.

Id. at 844; Corus Staal BV v. Dep't of Commerce, 395 F.3d 1343,

1346 (Fed. Cir. 2005).

## III. DISCUSSION

        Commerce considers three regulatory criteria in

determining whether to revoke an antidumping duty order in part:

1) whether the exporter or producer has sold the merchandise at
not less than normal value for a period of at least three
consecutive years; 2) whether the exporter or producer agrees in
writing to immediate reinstatement of the order if Commerce
later concludes that the subject merchandise was sold at less
than normal value; and 3) whether the continued application of
the order is otherwise necessary to offset dumping.  19 C.F.R. §
351.222(b)(2)(i).  Based upon these criteria, if Commerce
determines that the order is no longer warranted, Commerce "will
revoke the order as to those producers or exporters."  19 C.F.R.
§ 351.222(b)(2)(ii).

     In light of its then pending anti-circumvention
investigation and the affirmative preliminary finding of
circumvention, Commerce found that Feili did not satisfy the
first and third regulatory requirements for revocation under 19
C.F.R. § 351.222(b)(2)(i).[5]  Final Results, 74 Fed. Reg. at 3,562
and accompanying Issues and Decision Memorandum, A-570-868 (Jan.
12, 2009), Admin. R. Pub. Doc. 140, cmt. 3B, available at
http://ia.ita.doc.gov/frn/summary/PRC/E9-1106-1.pdf (last

_____

[5] Commerce stated that "until the Department can be satisfied that
Feili's sales of circumventing merchandise are not dumped, we
cannot determine whether Feili has satisfied two of the three
requirements for revocation, i.e., that Feili has not dumped for
at least three consecutive years and that the continued
application of the antidumping duty order is not otherwise
necessary to offset dumping." Decision Memorandum, cmt. 3B at
12.

visited Sept. 22, 2010) ("Decision Memorandum"). Accordingly,

Commerce did not revoke the antidumping order with respect to

Feili.  Final Results, 74 Fed. Reg. at 3,562.

Feili claims that Commerce's determination not to

revoke the duty order was not based on substantial evidence and

not in accordance with the law.

**A. Commerce's determination that Feili did not satisfy
the threshold requirement for revocation is based on
substantial evidence and in accordance with law.**

The first requirement for revocation, referred to as

the "threshold" requirement, examines a party's past behavior to

determine whether the party covered by the order has established

three consecutive years of no dumping.  See 19 C.F.R.

351.222(b)(2)(i)(A); Amended Regulation Concerning the

Revocation of Antidumping and Countervailing Duty Orders, 64

Fed. Reg. 51,236, 51,238 (Sept. 22, 1999) (final rule) ("Amended

Revocation Regulation").[6]

In assessing Feili's revocation request, Commerce

determined that "the issue of whether Feili is engaged in

circumventing the antidumping duty order is relevant to whether

Feili has satisfied the criteria for revocation under 19 C.F.R.

§ 351.222."  Decision Memorandum, cmt. 3B at 11.  Feili contends

---

[6] In the Amended Revocation Regulation, Commerce explains in
further detail the amended final rule concerning the revocation
of antidumping duty orders, responds to comments received during
the rulemaking process, and discusses changes from earlier
versions of the rule.

that Commerce's scope inquiry is irrelevant to determining

whether Feili has satisfied the criteria for revocation,

reasoning that a scope inquiry is not intended to determine the

existence of dumping.  However, the issue is not whether the

specific purpose of a scope inquiry is to determine whether

merchandise is being sold at less than fair value.  Rather, the

issue is whether the scope inquiry properly bears on the

regulatory requirements for revocation.

        Commerce's scope inquiry relates to the accuracy of

Feili's prior dumping margin calculations.  In a scope inquiry

concerning minor alterations of merchandise, Commerce determines

whether or not the merchandise at issue is within the class or

kind of merchandise subject to an antidumping duty order.  19

U.S.C. § 1677j(c) (2006); 19 C.F.R. § 351.225(i); see also

Affirmative Preliminary Determination, 73 Fed. Reg. at 63,685.

An affirmative finding of circumvention indicates that

merchandise subject to the scope of the order, in this case

cross-bar tables, was not included in the calculation of

previous dumping margins, thereby indicating that such margin

calculations did not reflect all subject merchandise being sold

in the United States.  Accordingly, circumvention of an order

relates to Commerce's determination as to whether a party has

not dumped all merchandise covered by the order for three

consecutive years and satisfied the threshold requirement for

revocation under 19 C.F.R. § 351.222(b)(2)(i).

    In this case, the affirmative preliminary finding of

circumvention, at a minimum, called into question the accuracy

of Feili's prior dumping margins because merchandise

preliminarily determined to be within the scope of the order was

not included in the calculation of those margins.  Given the

relevance of the then pending scope inquiry and the affirmative

preliminary finding of circumvention on the accuracy and

reliability of Feili's prior margin calculations, Commerce

lawfully considered Feili's possible circumvention of the order

in determining whether Feili satisfied the threshold requirement

for revocation.  See, e.g., Samsung Elecs. Co. v. United States,

20 CIT 1306, 1311, 946 F. Supp. 5, 10-11 (1996) (finding it

"unreasonable to order revocation remand results earlier than

the completion of the related anti-circumvention and changed

circumstances reviews" despite four years of de minimis margin

calculations).

    Feili maintains that, even if the scope inquiry were

relevant to the revocation decision, it could only be relevant

with respect to the fifth administrative review since the

second, third, and fourth reviews covered merchandise that

entered U.S. Customs territory before Commerce initiated the

scope inquiry.[7]  Feili further asserts that the de minimis

calculation in the Final Results of the fifth period of review

("POR") is undisturbed by the scope inquiry because Commerce did

not collect antidumping duties on cross bar-tables until after

the fifth POR.  See Affirmative Final Determination of

Circumvention, 74 Fed. Reg. at 20,922 (instructing Customs to

continue to suspend liquidation for entries made on or after

July 1, 2007).  Therefore, Feili contends that the scope inquiry

is irrelevant to all four consecutive administrative reviews

wherein Commerce found de minimis or zero dumping margins.[8]

---

[7] If Commerce issues a final determination in a scope inquiry
that the product in question is included within the scope of the
order, "any suspension of liquidation under paragraph (l)(1) or
(l)(2) of this section will continue. Where there has been no
suspension of liquidation, [Commerce] will instruct the Customs
Service to suspend liquidation . . . for each unliquidated entry
of the product entered, or withdrawn from warehouse, for
consumption on or after the date of initiation of the scope
inquiry."  19 C.F.R. § 351.225(l)((3); see also Target Corp. v.
United States, 626 F. Supp. 2d 1285, 1300 (CIT 2009) ("The
liquidation of merchandise subject to an affirmative
anticircumvention determination is suspended as of the date of
initiation of the anticircumvention proceeding.").
[8] Although Feili first requested revocation during the fourth
administrative review, based upon its claim of three years of no
dumping during the second, third, and fourth administrative
reviews, Commerce determined that Feili did not timely request
revocation in accordance with section 351.222 of the
Department's regulations or provide the required certifications
with that request.  See unpublished Issues and Decision
Memorandum, A-570-868 (Dec. 7, 2007), available at
http://ia.ita.doc.gov/frn/summary/PRC/E7-24366-1.pdf (last
visited Sept. 17, 2010) (accompanying the final results of the
fourth review).  Feili acknowledges that it did not timely
request revocation in the anniversary month of the order
immediately preceding the start of the fourth review.

Feili's claim wrongly equates the non-collection of antidumping duties with a finding of no dumping of all subject merchandise during the fifth POR.  Generally, with a final affirmative finding of circumvention, Commerce instructs Customs to continue to suspend liquidation that was already instructed in the affirmative preliminary determination of circumvention. 19 C.F.R. § 351.225(l)(3); see also Affirmative Final Determination of Circumvention 74 Fed. Reg. at 20,922.  However, in this case, Commerce reasoned that doing so would include merchandise that entered during a completed review period, i.e., the fifth POR.  Affirmative Final Determination of Circumvention, 74 Fed. Reg. at 20,922.  Therefore, Commerce moved the suspension of liquidation date for cross-bar tables from June 1, 2006 to June 1, 2007, "the first day of the only pending administrative review period of this order."  Id. at 20,922.

Commerce moved the suspension of liquidation date because it reasoned that it is Commerce's practice to apply the results of an anti-circumvention determination only to entries made after the last completed review period, not because it had determined that Feili had not dumped cross-bar tables during the fifth POR.  See id.  Commerce's decision to move the date of suspension does not undermine the relevance of the scope inquiry, initiated on the same day as the first day of the fifth

POR, to the dumping margin calculation in the Final Results of

that review.  Furthermore, the mere fact that Feili did not pay

antidumping duties on cross-bar tables during the fifth POR does

not demonstrate that Feili did not sell those tables at less

than fair value nor does it indicate that the margin calculation

for the fifth POR covered all subject merchandise.

Feili's claim that the de minimis dumping margins over

four consecutive reviews satisfy the threshold requirement for

revocation on its face is also unconvincing.  Even if Commerce

normally relies upon the dumping margins calculated in previous

administrative reviews to determine whether a party has

established three years of no dumping, Commerce will engage in a

"thorough analysis of all relevant information" in determining

whether to revoke an antidumping duty order.  See Amended

Revocation Regulation, 64 Fed. Reg. at 51,238.

In this case, the de minimis dumping margin in the

fifth POR did not include cross bar tables that Commerce already

preliminarily determined were subject to the antidumping duty

order.  See Affirmative Preliminary Determination of

Circumvention, 73 Fed. Reg. at 63,684.  Accordingly, Commerce

determined that Feili's margin calculation during the fifth POR

may not reflect all subject merchandise sold by Feili during the

review period.  As Commerce explained, "if the Department makes

an affirmative final determination of circumvention, until the

Department can be satisfied that Feili's sales of circumventing

merchandise are not dumped, we cannot determine whether Feili .

. . has not dumped for at least three consecutive years."

Decision Memorandum, cmt. 3B at 12.  Since there was no record

information regarding Feili's U.S. prices or its factors of

production for cross-bar tables when Commerce issued the Final

Results, Commerce was unable to determine whether Feili sold

such tables at normal value during the fifth POR.  Id. at 13.[9]

Commerce, therefore, reasonably determined that Feili failed to

show it had not dumped all subject merchandise produced during

the underlying review.  See id.

          Commerce's resulting determination that Feili failed

to satisfy the threshold requirement for revocation is not based

on speculation that Feili engaged in dumping during the fifth

POR, as Feili alleges.  Feili points out that the record does

not contain any evidence that Feili sold cross-bar tables at

less than normal value, and, accordingly, there is no record

evidence that the overall dumping margin for Feili would have

been above de minimis levels had cross-bar tables been included

in the calculation.  This argument misses the mark because

Commerce did not presume Feili dumped cross-bar tables.  Rather,

_____

[9] As will be addressed later in the opinion, Commerce was not
required to obtain information on cross-bar tables and determine
if they were sold at not less than normal value during the fifth
POR prior to issuing the Final Results and denying the request
for revocation.

Commerce explained that it lacked the necessary information to calculate the dumping margin for cross-bar tables when it issued the Final Results, and, as such, was "not in a position to determine whether circumventing merchandise has been sold at less than normal value during [the fifth POR]."  Id. at 11.

In Carbon Steel from Canada, Commerce similarly declined to revoke an antidumping order, finding that a pending scope inquiry prevented Commerce from determining whether the criteria for revocation had been satisfied.  See Certain Corrosion-Resistant Steel Flat Products and Cut-to-Length Carbon Steel Plate from Canada, 66 Fed. Reg. 3,543 (Dep't Commerce Jan. 16, 2001) (final results and determination not to revoke in part) ("Carbon Steel from Canada"), and accompanying Issues and Decision Memorandum, A-122/822/823, ARP 8-98 (Jan. 16, 2001), cmt. 1 for Gerdau MRM Steel Co. ("MRM"), available at http://ia.ita.doc.gov/frn/summary/canada/01-1224-1.txt (last visited Sept. 14, 2010) ("Carbon Steel Decision Memorandum"). As in this case, the party requesting revocation had zero dumping margins for three years.  Nevertheless, Commerce concluded that it was unable to determine whether merchandise within the scope of the order was being sold in the United States at less than normal value until the completion of the related scope inquiry.  Carbon Steel Decision Memorandum at cmt. 1 for MRM.

In sum, Commerce lawfully considered the pending scope inquiry and the affirmative finding of circumvention in assessing whether Feili established the absence of dumping for three years, the threshold requirement for revocation. Commerce's determination that Feili did not satisfy the threshold requirement under 19 C.F.R. § 351.222(b)(2)(i) is supported by substantial evidence.

**B. Commerce's determination that the continued application of the order is otherwise necessary to offset dumping is based on substantial evidence and in accordance with law.**

Commerce's lawful determination that Feili failed to satisfy the threshold requirement for revocation provides a substantial evidentiary basis for Commerce to decline to revoke the antidumping order.  Commerce's determination that Feili failed to satisfy the third regulatory requirement for revocation under 19 C.F.R. § 351.222(b)(2)(i) also is based on substantial evidence and in accordance with law

The third requirement for revocation, "whether the continued application of the antidumping duty order is otherwise necessary to offset dumping," examines a party's future behavior.  See 19 C.F.R. § 351.222(b)(2)(i)(C); Amended Revocation Regulation, 64 Fed. Reg. at 51,237-39.  Where there is an absence of dumping for three years, Commerce ordinarily presumes that the order is not necessary to offset future

dumping.  Amended Revocation Regulation, 64 Fed. Reg. at 51,238;

see Decision Memorandum, cmt. 3A at 8.  This presumption,

however, may be rebutted by positive evidence of the continued

necessity of the order.  Amended Revocation Regulation, 64 Fed.

Reg. at 51,238.

          Feili alleges that Commerce's revocation determination

is not in accordance with law because Commerce employed the

incorrect "not likely" legal standard rather than the amended

rule's "necessary" standard which requires positive record

evidence that the order is necessary to offset future dumping.

This argument is unconvincing.

          In 1999, Commerce amended its regulations for revoking

an antidumping duty order contained in 19 C.F.R. § 351.222(b).

Amended Revocation Regulation, 64 Fed. Reg. at 51,236.  The

amended regulation changed the language from "the Secretary may

revoke an antidumping order . . . " to read "[t]he Secretary

will revoke the antidumping duty order."  Compare 19 C.F.R. §

351.222(b)(2) (current through April 1, 1999), with 19 C.F.R. §

351.222(b)(2)(ii).  In addition, the amended regulation removed

the "not likely" standard under which Commerce determines if "it

is not likely that [the exporters or producers covered by the

order] will in the future sell the subject merchandise at less

than normal value . . . "  19 C.F.R. § 351.222(b)(2)(ii)

(current through April 1, 1999).  Instead, the amended

regulation provides that Commerce will consider "whether the
continued application of the antidumping duty order is <u>otherwise</u>
<u>necessary</u> to offset dumping.  19 C.F.R. § 351.222(b)(2)(i)(C);
<u>Amended Revocation Regulation</u>, 64 Fed. Reg. at 51,237 (emphasis
added).  Thus, the amended regulation changed the "not likely"
standard and "clarifies that Commerce must make an affirmative
finding of necessity" to retain an antidumping duty order.
<u>Amended Revocation Regulation</u>, 64 Fed. Reg. at 51,239.

      Feili's claim that Commerce employed the incorrect
"not likely" standard relies on selective language in the
<u>Decision Memorandum</u> in which Commerce found that it is not
possible "to determine that Feili would likely not sell such
merchandise at less than fair value in the future."  <u>See</u>
<u>Decision Memorandum</u>, cmt. 3B at 11.  However, the amended
regulation's "necessary" standard does not preclude Commerce
from considering the likelihood that Feili would dump cross-bar
tables in the future.  <u>See</u> <u>Amended Revocation Regulation</u>, 64
Fed. Reg. at 51,239 ("Evidence relating to the likelihood of
future dumping will still be considered under the revised
regulation because such evidence relates to the necessity of the
order.").  Furthermore, Commerce ultimately determined that,
based upon the record, it could not determine that Feili
satisfied the regulatory requirement that "the continued
application of the antidumping duty order is not otherwise

necessary to offset dumping," the precise language of the third

criterion of the amended regulation.  See id., cmt. 3B at 12;

see generally 19 C.F.R. § 351.222(b)(2)(i)(C).  Commerce clearly

concluded that the "otherwise necessary" requirement of the

amended regulation was not satisfied.

        To further buttress its claim that Commerce applied

the wrong legal standard, Feili cites to the portion of the

Decision Memorandum in which Commerce asserts that this Court

has "confirmed that 19 C.F.R. § 351.222(b)(2) permits the

Department to revoke the order in part if the three-part

revocation test is satisfied, but it does not mandate

revocation."  Decision Memorandum, cmt. 3B at 12 (citing Hyundai

Elec. Co., Ltd. v. United States, 23 CIT 302, 308, 53 F. Supp.

2d 1334, 1340 (May 19, 1999).  Feili asserts that Commerce

misconstrued its own regulation because, under the amended

regulation, revocation is required by law if the three criteria

for revocation are satisfied.

        Feili correctly points out that, under the amended

regulation, Commerce "will revoke the order" if it determines,

based upon the three criteria, that the order is no longer

warranted.  19 C.F.R. § 351.222(b)(2)(ii) (emphasis added).  The

Hyundai case, cited by Commerce in the Decision Memorandum,

refers to this Court's analysis of a previous version of the

regulation under which Commerce "may revoke" an order if the

criteria are satisfied.[10]  See Hyundai, 23 CIT at 308, 53 F.

Supp. 2d at 1340.  Nevertheless, Commerce did not deny Feili's

request for revocation based on a determination that it has

discretion to deny the request for revocation despite Feili's

satisfaction of the three regulatory requirements.  Rather,

Commerce clearly found that Feili failed to satisfy two of the

requirements for revocation.  Decision Memorandum, cmt. 3B at

12.

        Moreover, changing the term "may" to "will" in the

amended regulations did not remove Commerce's significant

discretion in determining whether a party satisfies the criteria

for revocation.  In particular, "[t]he 'necessary' standard

represents the full spectrum of circumstances under which the

Department could maintain an order."  Amended Revocation

Regulation, 64 Fed. Reg. at 51,239.  Commerce has discretion to

consider all relevant evidence, including "trends in prices and

---

[10]  In Hyundai, this Court was analyzing a previous version of
Commerce's regulations relating to revocation of an antidumping
duty order, 19 C.F.R. § 353.25(a), the precursor to 19 C.F.R. §
351.222(b).  Despite the Hyundai Court's reference to the "may
revoke" language of the previous regulation in effect at the
time, the Court did not focus on whether Commerce properly
denied revocation even though Hyundai had satisfied the
regulatory requirements for revocation.  Commerce had denied
revocation because it determined that Hyundai did not satisfy
all of the regulatory criteria for revocation; the revocation
determination was not based on an exercise of its discretion
even though Hyundai had satisfied the regulatory criteria.  This
Court upheld Commerce's determination that Hyundai did not
satisfy the "not likely" criterion for revocation as based on
substantial evidence.  Hyundai, 53 F. Supp. 2d at 1346-53.

costs, currency movements, and other market and economic factors
that may be relevant to the likelihood of future dumping." Id.
at 51,238.

        Under the comprehensive nature of the "necessary"
standard, Commerce properly considered Feili's possible
circumvention of the order in assessing whether Feili satisfied
the third requirement for revocation.  As previously discussed,
the pending scope inquiry relates to the accuracy of Feili's
prior margin calculations.  Consequently, the inquiry relates to
whether past margin calculations are predictive of future
behavior, and, specifically, the likelihood that Feili will sell
cross-bar tables at less than normal value in the future.  This
Court has recognized that "predicting future behavior is not an
easy task" and that determining the likelihood of future dumping
"necessarily involves an exercise of discretion and judgment."
Tatung Co. v. United States, 18 CIT 1137, 1144 (1994).  Even if
"ordinarily, past behavior would constitute substantial evidence
of expected future behavior," id., this Court has stated that
"it is entirely reasonable for the Department to consider a
company's commercial behavior under the existing antidumping
order, and any attempts to evade that antidumping order" in the
context of a revocation analysis.  Carpenter Tech. Corp. v.
United States, 31 CIT __ , Slip Op. 07-18, 474 F. Supp. 2d.
1347, 1350, (2007).  If Feili circumvented the order, it "may

lead Commerce to conclude that Feili's successive periods of
zero margins are not truly indicative of its behavior towards
the U.S. market." Decision Memorandum, cmt. 3B at 11-12; see,
e.g., Carbon Steel Decision Memorandum" at cmt. 1 for MRM (where
Commerce similarly reasons that if it found that the party
requesting revocation had circumvented the order, then Commerce
might reasonably conclude that the successive periods of zero
dumping margins "are not truly indicative of its behavior
towards the U.S. market."). Given Commerce's discretion to
"weigh all of the evidence on the record", including evidence
relating to the likelihood of future dumping, it was reasonable
for Commerce to consider the ramifications of the related anti-
circumvention inquiry in determining whether the continued
imposition of the order was otherwise necessary to offset
dumping. See Amended Revocation Regulation , 64 Fed. Reg. at
51,238.

        Even assuming three consecutive years of no dumping,
which, in this case, was called into question by the preliminary
finding that Feili circumvented the order, the absence of
dumping "is not conclusive in all cases." Id. at 51,239.
Commerce can retain an antidumping duty order "if there is
positive evidence on the record indicating the continued
necessity of such order to offset dumping." Id. Feili argues
that there is no positive evidence on the record to indicate

that continuation of the order was otherwise necessary to offset

dumping because Commerce did not present any record evidence

that Feili's cross-bar tables were sold at dumped prices or

would likely be sold at dumped prices in the future.  Without

evidence to the contrary, Feili asserts that Commerce must

presume the duty order is not necessary to offset dumping.

Feili misconstrues the "necessary" standard by

maintaining that Commerce must have positive evidence that Feili

was dumping or likely to dump in the future in order to retain

the order.  However, the regulations require positive evidence

that the order is "otherwise necessary."  Id. at 51,238-39.  The

issue, therefore, is whether the pending scope inquiry and the

affirmative finding of circumvention are positive evidence

sufficient for Commerce to conclude that the continued

imposition of the order is otherwise necessary to offset

dumping.  See id. at 51,239 ("the Department can only retain an

antidumping . . . . duty order if there is positive evidence on

the record indicating the continued necessity of such order to

offset dumping").

As discussed earlier, when Commerce issued the Final

Results denying the request for revocation, Commerce lacked the

information necessary to calculate the dumping margins of cross-

bar tables.  Accordingly, Commerce could not determine that

Feili had not dumped such merchandise during the fifth POR nor

could it conclude that Feili would not dump cross-bar tables in
the future.  As Commerce explained, an affirmative finding of
circumvention would make it impossible "to determine that Feili
would likely not sell such merchandise at less than fair value
in the future" until it calculates Feili's margin including
entries of circumventing merchandise.  Decision Memorandum, cmt.
3B at 11.

        Despite Feili's claim otherwise, Commerce did not
presume that Feili failed to satisfy the third criterion for
revocation.  "Each revocation determination must be based upon
substantial, positive evidence."  Amended Revocation Regulation,
64 Fed. Reg. at 51,238.  Given the preliminary finding of
circumvention, Commerce reasonably determined that Feili's
dumping margins in the underlying and previous reviews did not
provide a substantial basis to conclude that the order was not
"otherwise necessary."  In other words, Commerce concluded that
its then pending scope inquiry and the affirmative preliminary
determination of circumvention, provided substantial, positive
record evidence that the continued imposition of the order was
otherwise necessary until Commerce had the opportunity to
determine if the subject cross-bar tables were circumventing the
order, and, if so, collect and analyze the information necessary
to determine whether those tables had been dumped.  Commerce's
determination that Feili did not satisfy the third criterion for

revocation was based on a reasonable exercise of its discretion
under the "necessary" standard and is supported by substantial
evidence.

> **C. The administrative review and the timing of the scope
> inquiry were conducted in accordance with law.**

Feili also challenges as unreasonable Commerce's
timing in conducting the scope inquiry and Commerce's decision
not to calculate a dumping margin for the subject cross-bar
tables prior to issuing the final results of the underlying
review.

Commerce noted that it had insufficient time to
calculate margins for Feili's cross-bar tables in the underlying
review because the statute required Commerce to complete the
review no later than January 10, 2009, approximately eleven
weeks after the issuance of the preliminary results in the scope
inquiry.  See 19 U.S.C. § 1675(a)(3)(A) (2006); Decision
Memorandum, cmt. 3B at 13.  Feili claims that the record did not
contain the requisite information to calculate or estimate
dumping margins for cross-bar tables because Commerce failed to
complete the scope inquiry in a timely manner and because
Commerce failed to coordinate the timing of the administrative
review and the scope inquiry in a just manner.  As support,
Feili maintains that Commerce did not request such information
from Feili and further asserts that Commerce took deliberate

actions to prevent such information from entering the
administrative record.   Accordingly, Feili argues that
Commerce's failure to administer the underlying review and the
separate scope inquiry in a just manner was unreasonable and not
in accordance with law.

Feili's challenges to the extended length and the
particular timing of the scope inquiry are most appropriately
raised in a challenge to the Affirmative Final Determination of
Circumvention.   However, as explained above, the Affirmative
Preliminary Determination of Circumvention was a valid
consideration in the underlying Final Results revocation
analysis.   Therefore, an evaluation of the scope inquiry timing
is not inappropriate.   Regardless, Feili's arguments with
respect to this issue are readily dismissed.

Within 45 days of receipt of an application for a
scope ruling, Commerce will initiate a scope inquiry.   19 C.F.R.
§ 351.225(c)(2).   Here, Commerce received the request for a
scope ruling on October 31, 2005, and initiated the scope
inquiry on June 1, 2006, approximately seven months later.
Affirmative Preliminary Determination of Circumvention, 73 Fed.
Reg. at 63,684.   Normally, Commerce will issue circumvention
rulings within 300 days of the initiation of the inquiry.   19
C.F.R. § 351.225(f)(5).   In this case, Commerce issued its final
ruling on May 6, 2009, almost three years after the scope

inquiry was initiated.  Although Commerce did take an

extraordinary amount of time to complete the scope inquiry,

Commerce is only committed to the 300-day time frame "to the

maximum extent practicable."  <u>See</u> 19 U.S.C. § 1677j(f) (2006).

Therefore, even had Commerce maintained the 45-day time frame on

the initiation of the scope inquiry, it was not mandated by

statute or regulation to complete the inquiry within 300 days.

In addition, "unless expressly precluded by statute," Commerce

may "for good cause, extend any time limit established by this

part."  19 C.F.R. § 351.302(b).  Although the scope inquiry was

conducted on a very extended timeline, the time frame was not

contrary to law.

        Feili also takes issue with the fact that Commerce

could have conducted the scope inquiry in conjunction with the

administrative review under 19 C.F.R. § 351.225(f)(6), but opted

not to do so.  There is no obligation for Commerce to administer

the two proceedings jointly.  "When an administrative review . .

. is in progress at the time the Secretary provides notice of a

scope inquiry . . ., the Secretary <u>may</u> conduct the scope inquiry

in conjunction with that review."  19 C.F.R. § 351.225(f)(6)

(emphasis added).  Here, Commerce chose to conduct the two

proceedings separately, although parties were allowed to comment

on the relevance of the pending scope inquiry to Feili's

revocation request in the underlying administrative review.  <u>See</u>

Memo from Analyst to File: Opportunity to Comment on Affirmative Preliminary Determination of Circumvention, Admin. R. Pub. Doc. 130 (Nov. 12, 2008).  Commerce appropriately exercised its discretion in this regard.

Additionally, during the pendency of an administrative review, Commerce has the authority to request information concerning merchandise that is the subject of a scope inquiry. 19 C.F.R. § 351.225(l)(4).  Feili insists that because Commerce factored the absence or presence of dumping into its revocation determination, Commerce should have been proactive in soliciting information from Feili regarding the cross-bar tables at issue in the scope inquiry based on "basic principles of fairness." See, e.g., Hontex Enterprises v. United States, 27 CIT 272, 280 248 F. Supp. 2d 1323, 1330 (2003) (stating that this Court must ensure that the administrative process was fundamentally fair). According to Feili, Commerce did not ask for the relevant information with which it could calculate or estimate the absence of dumping on folding tables with cross-bars, and, in fact, deliberately worked to prevent such information from entering the record of the administrative review by rejecting Meco's initial case brief that contained references to the verification report from the scope inquiry and Feili's responses in the inquiry.  See Commerce Letter to Petitioner, Admin. R. Pub. Doc. 101, (Sept. 29, 2008).  In addition, discussion of

certain issues from the scope inquiry was not permitted at the public hearing for the administrative review.  <u>See</u> Hearing Transcript from In the Matter of: Administrative Review of the Antidumping Duty Order on Folding Metal Tables and Chairs from the People's Republic of China, Admin. R. Pub. Doc. 128, at pp. 8-9, 15-16 (Nov. 6, 2008).  Feili states that Commerce could have obtained information for its dumping analysis from the record of the scope inquiry.  Feili concludes that this conduct was not in accordance with the regulations and is contrary to law.

It is important to note that there was no final determination of circumvention during the pendency of the underlying administrative review.  The preliminary finding of circumvention only occurred approximately eleven weeks prior to the statutorily imposed deadline for the final determination in this review.  The time remaining for Commerce's decision was limited.  Significantly, there is no statutory or regulatory requirement that Commerce recalculate dumping margins to include merchandise preliminarily determined to be circumventing the antidumping duty order.  Although Feili may have preferred such recalculation prior to issuing the <u>Final Results</u>, Commerce was not required to include this information in its administrative review, and, in turn, incorporate it into its revocation analysis.

Moreover, Feili could have offered information on cross-bar tables voluntarily; it did not.  It was aware that the related scope inquiry was under way, and that the results of the inquiry could conceivably affect an administrative review.  In anticipation of the possibility that Commerce would find the cross-bar tables to be within the scope of the antidumping duty order, Feili could have offered the relevant information for this merchandise.  Earlier in the administrative review, Meco had requested that Commerce calculate or estimate antidumping margins for the cross-bar tables in its comments on Feili's questionnaire response.  See Letter from Akin Gump to the Secretary of Commerce, Admin. R. Pub. Doc. 38 at 2 (Oct. 30, 2007); Letter from Akin Gump to the Secretary of Commerce, Admin. R. Con. Doc. 21 at 2-3 (July 31, 2008).  Feili could have concurred with this request at the time; it chose not to do so.

On a logical level, it is incongruous for Commerce to make an affirmative preliminary determination of circumvention in the scope inquiry, and later conclude in the underlying review that the Antidumping Duty Order is revocable with respect to Feili.  It was reasonable for Commerce to defer granting a revocation request until it was able to fully consider the possible dumping implications of newly-included merchandise subject to the antidumping duty order.  Feili may request revocation of the order again in the future.

In sum, Commerce was not required to request information regarding the cross-bar tables in the underlying review because it had not yet determined that such merchandise was covered by the antidumping duty order and did not act contrary to law.

## IV.   <u>CONCLUSION</u>

In light of the related pending anti-circumvention inquiry, and the preliminary finding of circumvention, Commerce reasonably determined that Feili did not satisfy the requirements for revocation under 19 C.F.R. § 351.222(b)(2)(i). Commerce's determination to deny the revocation request is supported by positive, substantial evidence and is in accordance with law.

For the foregoing reasons, Feili's motion for judgment upon the agency record is denied and judgment is entered in favor of the United States.


                                    /s/ Richard W. Goldberg
                                    Richard W. Goldberg
                                    Senior Judge


Dated: September 23, 2010
       New York, New York

**UNITED STATES COURT OF INTERNATIONAL TRADE**

```
FEILI GROUP (FUJIAN) CO.,
LTD., FEILI FURNITURE
DEVELOPMENT LIMITED QUANZHOU
CITY
                                       Before:   Richard W. Goldberg,
            Plaintiffs,                            Senior Judge

            and                                  Court No. 09-00068

COSCO HOME AND OFFICE
PRODUCTS

            Plaintiff-
            Intervenor

            v.

UNITED STATES,

            Defendant,

            and

MECO CORPORATION,

            Defendant-
            Intervenor.
```

<u>**JUDGMENT**</u>

Upon consideration of <u>Folding Metal Tables and Chairs from the People's Republic of China: Finals Results of Antidumping Duty Administrative Review</u>, and all comments filed in connection therewith; and upon consideration of all other papers herein; and upon due deliberation, it is hereby

**ORDERED** that Commerce's <u>Final Results of Antidumping Duty Administrative Review</u> are SUSTAINED; and it is further

**ORDERED** that judgment is entered in favor of the United

States.


**SO ORDERED.**


/s/ Richard W. Goldberg
Richard W. Goldberg
Senior Judge

Dated: September 23, 2010
       New York, New York